## HEFFINGTON v. GILLESPIE et al.
### No. 14577.

Court of Civil Appeals of Texas. Fort Worth.

Nov. 19, 1943.

Rehearing Denied Dec. 17, 1943.

Taylor Carlisle and A. G. Henry, both of Kaufman, for appellant.

Chrestman, Brundidge, Fountain, Elliott & Bateman, of Dallas, for appellees.

BROWN, Justice.

Joe R. Gillespie, deceased, left the following will which was probated:

"Last will and testament of Joe R. Gillespie of Frankston, Anderson County, Texas.

"I give devise, bequeath my estate and property, real and personal, after all my just debts which may be a claim upon my estate are paid. As follows:

"To my beloved wife Carrie Three Thousand Dollars Cash ($3000), and all household effects.

"To Arthur L. Gillespie 121 acres the A Miles farm near Jiba in Kaufman County, Texas.

"To Minnie G. Meadows 142½ acres the Evans farm east of the town of Kaufman.

"To John R. Gillespie Five Hundred Dollars cash.

"To the seven daughters of Jno Gillespie 191 acres of the John Ferguson Survey adjoining the Jim Owens home farm 3½ miles NE of Frankston, as per field notes made by Ben F. Wathens.

"To Jeff Gillespie Five Hundred Dollars ($500) cash.

"To the three children of Jeff, Francis, Robert and Lillian, 144 acres near Kaufman, the C. T. Pope farm.

"To Bryan Gillespie 140 acres, adjoining his 360 acres on the south, side by side the length of the 360 acres.

"The balance of the estate to be divided share and share alike. If there be real estate that can not be equally divided, in that event the executors are to sell and make the distribution.

"My great desire is that everything is to be settled in peace and love with each other. No court procedure, only the probating of the will. I name my brother T. E. Gillespie and Ira E. Meadows, as Executors without bond.

"In witness whereof I have signed this instrument as my last will April 3rd A. D. 1934.

"(Signed) Joe R. Gillespie."

The two named executors qualified.

Executor Gillespie executed the following contract of sale with V. F. Heffington:

"State of Texas }
"County of Kaufman }

"This contract this day made by and between T. E. Gillespie, one of the executors of the last will and testament of Joe R. Gillespie, deceased, and acting for Ira Meadows, the coexecutor of said will, and V. F. Heffington as follows:

"Said executors agree to sell to said Heffington that one hundred and nine and one-third acres (109⅓) of land situated in Anderson County, Texas, and known as the Joe R. Gillespie Homestead and being a part of the John Fergerson Survey as per field notes recently made by the County Surveyor of Anderson County at and for the sum of five thousand dollars ($5,000.00) cash to be paid on or before the 15th day of December, 1941. The said executors are to retain in the Deed of Conveyance to said Heffington one-half of the one-eighth mineral interest in said land which one-half of the said one-eighth is non-participating in down payments, bonuses, or rentals. Said executors are to furnish said Heffington with abstract showing good title to said land and should objections be raised to same by the attorney of said Heffington the said executors shall have a reasonable time in which to cure same and said executors are to deliver Deed of Conveyance to said land to said Heffington on or before December 15th, 1941, and on said date said Heffington agrees to pay the consideration hereinabove set forth. The said Heffington deposits with this contract a cashier's check for the sum of five hundred dollars ($500.-00) with the Farmers & Merchants National Bank of Kaufman and should he fail to comply with his part of this agreement said forfeit is then to be paid by said bank to said executors. It is agreed and understood this contract is not binding on said Heffington unless on or before the 15th day of December, 1941, he can obtain a rental contract from the heirs of Joe R. Gillespie, deceased, on about one thousand acres of land in Anderson County adjoining the above mentioned land.

"Witness our hands in Kaufman County, Texas, this 14th day of October, A.D. 1941.

"(Signed) T. E. Gillespie, one of the Executors of the Last Will and Testament of Joe R. Gillespie. V. F. Heffington."

Abstracts of title, covering the land involved, were delivered to Heffington and by him delivered to Monroe Ashworth, a member of the Bar of Kaufman County, Texas, who examined same for Heffington and rendered the following opinion:

"Monroe Ashworth,    County of Kaufman
"County Judge          Kaufman, Texas

November 13, 1941.

"Mr. V. F. Heffington
"Kaufman, Texas.
"Dear Sir:

"I have examined the abstract in four parts prepared by the Anderson County Abstract Company covering 1463.4 acres of land out of the John Ferguson League, abstract number 22 situated in Anderson County, Texas, less 15 acres to W. F. Neill, 32 acres to Herman Warrington, and 17.62 acres to Boyd Bacon. Title now appearing in the estate of Joe R. Gillespie, deceased. Subject however to the following exceptions:

"The date of the last supplemental abstract is October 24, 1941, at 5 o'clock P.M., one supplemental of this abstract is missing to-wit, from January 29, 1913, at 2 o'clock P.M. to December 10, 1920, at 3 o'clock P.M. Therefore this partial opinion does not embrace that period of time and it will be necessary for me to be furnished the record between those dates.,

"As of January 29, 1913, title to the 1384 acres more or less stood in the name of W. T. Fields by virtue of his deed from A. Harris dated October 20, 1910, and on December 4, 1920, the title to this land stood in the name of Joe R. Gillespie by virtue of his deed from J. P. Williams et ux. and W. W. Scarborough et ux., subject to certain indebtedness shown in said deed page 5 of abstract number 7544 recorded in vol. 135, page 479, Deed Records of Anderson County, Texas. I find that the said indebtedness as shown in said deed has been released by proper instruments of writing and except the 3 tracts of land to-wit, 15 acres to W. F. Neill, 32 acres to Herman Warrington, 1762 acres to Boyd Bacon, which was conveyed to them by said Joe R. Gillespie during his life time.

"At page 36 of supplemental abstract number 9595 is shown an oil and gas lease by Joe R. Gillespie and wife to H. G. Lewis dated May 3, 1934; running for the primary term of 10 years on 388 acres more or less known as block number 1 of the subdivision of said 1463.4 acres. It may be that this lease has expired under its own terms but if not it should be released. This lease was assigned by the said H. G. Lewis to the Humble Oil and Refining Company as shown on page 44 of said supplemental abstract.

"At page 54 of said supplemental abstract is shown an oil and gas lease from Joe R. Gillespie et ux. to Albert Baggett dated June 8, 1939, covering 841 acres of land of the Joe R. Gillespie tract. This lease is for the primary term of 5 years and may have terminated by its terms. You should require proof of this fact or obtain a release of this oil and gas lease.

"At pages 62 and 64 and 66 are shown affidavits by W. L. Ward, Jeff Austin, and F. M. Farley showing that certain leases in Anderson, Henderson, and Cherokee Counties were being held in escrow which leases included portions of this land in question. These affidavits are dated October 22, 1940, there should be a release of these oil and gas leases which are being held in escrow.

"At page 70 of said supplemental abstract number 9595 is shown a royalty contract by Joe R. Gillespie and wife, Carrie Gillespie, to William Hix and Saul Rabenowitz dated February 6, 1941, recorded in vol. 312, page 389, Deed Records of Anderson County, Texas. This is a royalty deed conveying to the said William Hix et al. a 1/16 undivided interest in and to all of the oil, gas and other minerals in and under 341 acres out of the extreme west side of the Joe R. Gillespie lands in the John Ferguson Survey and located about 4 miles northeast from the town of Frankston, Texas. You should require a release of this contract or a quitclaim of this mineral deed. By the terms of this royalty deed or contract it is to run for the term of 10 years or as long as oil, gas or other minerals are being produced from the said land.

"At page 73 of said supplemental abstract is shown an assignment of this royalty deed by William Hix and Saul Rabenowitz to A. S. Genecov who is shown by this abstract to be the personal owner of the said mineral rights on the 341 acres in the extreme west part of the Joe R. Gillespie land.

"At page 79 of said supplemental abstract is shown the will of Joe R. Gillespie, deceased, dated April 3, 1934, filed for probate April 30, 1941, recorded in vol. 50, page 536, of the Probate Minutes of Anderson County, Texas. In this will the following are the devices in said will: Carrie Gillespie, wife of the said Joe R. Gillespie, deceased, Arthur L. Gillespie, Minnie G. Meadows, John R. Gillespie, the seven daughters of John R. Gillespie, Jeff Gillespie, the three children of Jeff, Frances, Robert, and Lillian, and Bryan Gillespie. The 7 daughters of John Gillespie were given 191 acres of the John Ferguson Survey adjoining the Jim Owens home farm 3½ miles northeast of Frankston, Bryan Gillespie was given 140 acres adjoining the 360 acres on the south, the length of the 320 acres, the balance of the estate to be divided share and share alike. T. E. Gillespie and Ira E. Meadows were appointed in the will as independent executors without bond. The will provided that in case there be real estate that can not be equally divided they are to sell and make the distribution. It is my understanding that you are proposing to purchase 109¾ acres which includes the home place of Joe R. Gillespie. It will be necessary for you to obtain a general warranty deed from

all the devices named in said will together with the executors in said will acting in that capacity. You should require a tax certificate showing all taxes paid up to and including the year 1941 and before consummating your purchase I should be furnished with the supplemental abstract for the time mentioned in the beginning of this opinion.

"Yours very truly, Monroe Ashworth."

The abstracts and opinion were by Heffington delivered to executor Gillespie and Heffington, on November 11, 1941, wrote Gillespie the following letter:

"Kaufman, Tex.
11/11/42

"Mr. T. E. Gillespie
"Jacksonville Tex.

"Mr. Gillespie I will be at Jeffs Friday the 14 and will bring the abstract and in hopes you can come will be at Jeff Gillespie house about noon.

"Very Res V. F. Heffington."

And on November 15, 1941, Heffington wrote Gillespie the following letter:

"Kaufman, Texas
November 15, 1941

"Mr. T. E. Gillespie
"Frankston, Texas
"Dear Sir:

"My attorney, Judge Ashworth, has advised me as shown in his written opinion dated November 13, 1941, that there has been conveyed some of the royalty interests in the land under investigation as well as some other defects in the title.

"This is to advise you that due to the fact that you cannot give a good title as per our written contract, I am no longer interested and will ask that you write to the F. & M. National Bank at Kaufman to return to me the cashier's check which I had put up as forfeit.

"Yours truly, V. F. Heffington."

Gillespie wrote the following letter to Heffington:

"Dallas, Texas
November 14, 1941.

"Mr. V. F. Heffington
"Kaufman, Texas.
"Dear Mr. Heffington:

"I was at the appointed place today at the time you named for our meeting and was disappointed to find that you had gone.

"I thank you for the return of the abstract that I left with you on October 27, in order that you could have our attorneys opinion on same.

"I did not know that one of the supplemental abstracts was missing. I went right on to Palestine this evening; and am having a copy of one made, which was be delivered to me tomorrow, and then I can get it to your attorney at once.

"I am mailing the opinion of your attorney to my attorney tonight, and any and all requirements will be met. We are anxious to deliver to you a perfect title, and this we are going to do.

"With very best wishes, I am,
"Yours truly, T. E. Gillespie."

The executors brought suit in Anderson County, where the lands involved herein lie, for the purpose of having the late Gillespie's will construed, and judgment in that proceeding was not had until February 10, 1942.

The following is the judgment:

"On this day, this cause coming regularly on to be heard, came the plaintiffs, T. E. Gillespie and Ira E. Meadows, as independent executors of the estate of Joe R. Gillespie, deceased; and it appearing to the court that Carrie Gillespie was duly served with citation and has wholly defaulted, that Robert Gillespie and Lillian Gillespie are minors, and were duly and legally served with citation for the time and in the manner required by law, that F. C. Williams, an attorney of this bar, has been appointed guardian ad litem for said minors, and, as such, has appeared and announced ready for trial, and that all other defendants personally waived issuance and service of citation in the manner provided by Rule 119, and entered their appearance in this cause. No jury was demanded and all matters of fact, as well as of law, were submitted to the court.

"The court having heard the pleadings and the evidence, and being fully advised, finds that Joe R. Gillespie left surviving him a widow, Carrie Gillespie, five children, to-wit, Arthur L. Gillespie, Minnie G. Meadows, Bryan Gillespie, John B. Gillespie and Jeff Gillespie, and the descendant of his deceased child, Lizzie Gillespie, to-wit, Joe Hamson; and that he also left surviving him twelve grandchildren, to-wit, seven daughters of John Gillespie, three children of Jeff Gillespie, one daughter of Minnie G. Meadows and a son of Bryan Gillespie. By his last will and testament the said Joe R. Gillespie gave his widow, Carrie Gillespie, $3000.00 and the household effects, made special bequests in dis-

proportionate amounts to certain of his children, gave a farm in Anderson County to the seven daughters of John Gillespie, and a farm in Kaufman County to the three children of Jeff Gillespie, and then provides for a complete and final partition and distribution of the residue of the estate and directs that 'the balance of the estate is to be divided, share and share alike.'

"The court finds that the deceased had made gifts to his children and his grandson, Joe Hamson, in varying amounts during his lifetime, and that his purpose in making special bequests to his children and their descendants was to equalize in a way the gifts made by him during his lifetime; that testator had no reason for disinheriting Joe Hamson, and therefore the presumption of law obtains that he did not intend to disinherit him in making disposition of the residue of his estate; that the testator had no intention of making an unnatural disposition of the residue of his estate, and since to construe the will as requiring the balance to be divided between the beneficiaries named in the will would operate to give to the grandchildren named as special beneficiaries in the will 10/16ths of the residue, and to John Gillespie and his family of seven daughters one-half of the entire residue of the estate, it is the conclusion of the court that the testator intended the residue of his estate to be distributed to his living children and the descendants of his deceased child; and

"It is therefore ordered, adjudged and decreed by the Court that the will of Joe R. Gillespie, deceased, be, and the same is hereby construed as requiring a distribution of the residue of the estate, after payment of creditors and the special bequests, to the living children of the testator and the issue of his deceased child, share and share alike, that is to say to Arthur L. Gillespie, Minnie G. Meadows, John Gillespie, Bryan Gillespie, Jeff Gillespie and Joe Hamson, share and share alike, and as excluding all other parties defendants from participation in the residue of said estate; and that the said T. E. Gillespie and Ira E. Meadows, as Independent Executors, are therefore hereby fully absolved of all liability, as respects said residue of said estate, to the defendants, Carrie Gillespie, the minor defendants, Robert Gillespie and Lillian Gillespie, and the defendants, Mrs. Merle Parker and husband, B. L. Parker, Mrs. Nelda Johnson and husband, R. M. Johnson, Mrs. Joe Burke and husband, Ray-

burn L. Burke, Mrs. Alice Russell and husband, R. C. Russell, Mrs. Minerva Riffe and husband, H. H. Riffe, Mrs. Jeanne Wallace and husband, H. O. Wallace, and Francis Gillespie Dabbs and husband, William Alva Dabbs.

"The guardian ad litem, F. C. Williams, is hereby allowed a fee of $50.00 for representing the minors, Robert Gillespie and Lillian Gillespie, which fee, together with all the costs of this suit, the plaintiffs, as Independent Executors, are directed to pay out of the property of the estate in their hands.

"This the 10th day of February, 1942.

"Lex Smith, Judge."

Heffington demanded a return of the $500 earnest money deposit, made by him under the contract, and, being refused, brought suit in the district court of Kaufman County against T. E. Gillespie and the Farmers & Merchants National Bank of Kaufman, with whom the earnest money was deposited.

Heffington pleaded that the contract entered into bound Gillespie to cure all defects and to deliver a deed of conveyance to him on or before December 15, 1941; that being the date on which the parties contracted to complete the sale.

He further pleaded that the contract was made by only one of the two independent executors, and therefore it was a contract that was unenforceable against the estate of Joe R. Gillespie, and therefore is not binding.

He pleaded further the opinion of his attorney, on which he relied, and that executor Gillespie "did not, would not and could not comply with these requirements on or before December 15, 1941".

The defendants Gillespie and the Bank answered by a general denial and by way of cross-action pleaded that after the execution of the contract of sale and before plaintiff's attorney had fully examined the abstract of title, plaintiff breached the contract and refused to go further therewith or to examine the complete abstract of title or to permit objections pointed out by plaintiff's attorney to be cured or to give time for the curing of same, and prayed for a recovery of the earnest money.

The case was tried to a jury and, after all evidence had been introduced, Heffington moved for an instructed verdict. His motion was denied.

The defendant Gillespie moved for an instructed verdict that plaintiff take nothing and for a recovery of the earnest money. His motion was granted and judgment followed.

Four points are presented by appellant Heffington:

(1) Error of the court in overruling appellant's motion for an instructed verdict and granting appellee Gillespie's motion for an instructed verdict and granting judgment for appellee Gillespie, in that appellant plead and proved that appellee did not and could not fulfill, perform or carry out his part of the written contract sued on and appellant had discharged and performed all of his obligations under the contract.

(2) The second point is as the first, and as a reason for the point asserts that appellant plead and proved that the written contract was a nullity and unenforceable.

(3) The third point is identical and the reason given for its soundness is that the uncontradicted evidence shows that there were outstanding oil interests against the land to be conveyed and therefore appellee could not have delivered the amount of oil interest contracted for by appellant.

(4) The fourth point is identical and gives for its support the assertion that the uncontradicted evidence and pleadings show that the estate of Joe R. Gillespie, deceased, in which the title to the land in question was vested, is not a party to the suit, only T. E. Gillespie, individually, being a party to the suit, and by the judgment appellant would be forced to deliver the $500 check to Gillespie individually, and that Gillespie is not entitled to recover anything individually, and the court costs could not have been taxed against the Gillespie estate.

Appellees counter with these propositions: That there is no error because the evidence shows without dispute that plaintiff refused to accept the abstract of title for examination, and thus breached the contract; that the contract is not unenforceable because signed by only one of the executors, since it recited that both of the executors were sellers and that one was signing for the other and there was no pleading or evidence of a lack of authority of one to act for the other; that the evidence showed no outstanding oil interests against the land other than that indicated in the contract of sale and such interests as could and would have been released, if

plaintiff had not breached the contract; that plaintiff's pleading and evidence show that the cashier's check put up by him as earnest money was by him made payable to T. E. Gillespie, or order, without adding the word executor; and plaintiff having brought suit against Gillespie without naming him as executor, he is estopped and cannot now for the first time complain of the lack of alleged necessary parties; that plaintiff's petition as a whole shows that Gillespie was sued in his capacity as executor, and the entire record shows that he answered and sought and recovered the fund in controversy in his capacity as executor. And, under such facts, the plaintiff is burdened with no responsibility to see that the money is properly disbursed or accounted for by defendant.

We shall not attempt to take the points up in the order presented, but discuss such issues as seem to us controlling.

■ We see no merit in appellant's fourth point. Under the facts and pleadings in the case it appears that appellee Gillespie was sued because of acts done by him while acting in his fiduciary capacity for the estate of Joe R. Gillespie, and the manner in which Heffington's pleadings presented his claim against the said executor, and the manner of expression used by the trial court in rendering judgment could not work to the injury of appellant, if the appellee should prevail. But we are of opinion that the trial court has erred in the disposition of the case.

■ Article 3432, Rev. Civil Statutes, expressly inhibits the conveyance of real estate by only one of several executors and demands the execution of all instruments of conveyance by all of the qualified executors.

In the instant suit, the contract of sale recites in its face that it is executed by one of the executors and the mere fact that it also recites "and acting for Ira Meadows, the co-executor of said will" adds no strength or validity to the contract.

The contract purports to have been executed only by executor Gillespie and that is the only signature thereon.

No further force or effect can be given this contract merely because executor Gillespie testified that executor Meadows left all such matters to Gillespie and always executed all instruments that Gillespie prepared.

The courts are not, in our opinion, permitted to speculate on the possibility, or the probability, of the full and complete acquiescence of one executor who has not contracted in writing to sell property belonging to the estate in his hands, when such contract is executed by only one executor and, in its executed condition, is not such a contract as may be enforced in the courts.

After this contract was executed by executor Gillespie, if for any reason whatsoever executor Meadows saw fit to decline to execute a deed to the property, this would have put an end to all negotiations.

If the contract before us is to be held valid and binding as to the proposed buyer, it is necessarily a one-sided and unfair contract in that the executors were permitted, under it, to speculate on the deal with the buyer and, if perchance they saw fit to sell to another at a better price, or if they merely decided not to consummate the deal, the buyer would be wholly in their power.

This must necessarily follow because it goes without saying that, if executor Meadows had declined to consummate the deal for any reason, Heffington could not enforce specific performance.

In Robertson et al. v. Scott, 172 S.W.2d 478, our Supreme Court discusses the question of the power of only one of several executors to execute a binding lease, or rental contract, which is intended to cover a period of time exceeding one year.

If only one of the qualified executors cannot enter into a binding contract to lease or rent lands for a period of more than one year, it must follow that only one of two or more such executors cannot make a binding contract for the sale of real estate—a contract that purports to bind the estate to convey the entire fee and not merely the use of the land for a definite period of time.

We do not believe that the record before us presents through uncontradicted and definite evidence that Heffington breached the contract and rendered it unnecessary for the seller either to comply or show that he could have and would have complied with the terms of the contract.

Such cases as Lieber v. Nicholson et al., Tex.Com.App., 206 S.W. 512 (judgment approved and entered as the judgment of the Supreme Court), Davenport v. Sparkman, Tex.Com.App., 208 S.W. 658 (opinion adopted by the Supreme Court and judg-ment entered as that of the Supreme Court), and Champion v. Taylor, Tex.Civ. App., 229 S.W. 627, are easily distinguished when attempted to be applied to the case at bar.

In the instant suit, executor Gillespie furnished Heffington with an abstract of title brought down to date, but which failed to contain such records as were to be found between the 29th day of January, 1913, to December 10, 1920, and being delivered to the attorney for the proposed buyer, the attorney gave his written opinion pointing out certain objections and requirements, which are predicated, as a matter of course, on the records incorporated in such portions of the abstract as were delivered by Gillespie, and the opinion was promptly delivered to Gillespie.

It further appears from the record that Heffington's attorney, in the presence of Gillespie and Heffington, pointed out the fact that, in his opinion, the will of Joe R. Gillespie would have to be construed by a court of competent jurisdiction and that guardianship proceedings must be had concerning the minor heirs that take title under the will.

And it appears that Heffington was acting under the advice of counsel when he advised Gillespie that he did not care to proceed further with the deal, because of the opinion and advice of counsel.

It is to be observed that no contention has been made to the effect that the attorney did not act in good faith, that his objections, requirements and advice were arbitrarily made and given, or that Heffington did not act in good faith in following his counsel's advice.

We are of opinion that time is of the essence of the contract before us. It specifically required the purchaser to pay the purchase price in cash on or before December 15, 1941, and for the seller to deliver a deed (with all objections and requirements met by the seller) to the buyer on or before December 15, 1941, at which date the purchase money must be paid.

It appears to us to be no answer to Heffington's contention that Gillespie procured the missing abstract and tendered same to Heffington and his attorney, after Heffington acted upon the opinion and advice of counsel.

It is not shown, nor, under the record, can it be shown, that the supplemental abstract contained instruments that cured the

212

objections made or met the requirements disclosed in the opinion. All such objections and requirements grow out of what is disclosed by the portions of the abstract that contain records made and facts that arose long after the dates covered by the missing abstract.

The missing abstract could serve no useful purpose other than to complete the chain of title from its beginning date down to the next abstract with which it should connect and perhaps the further purpose of disclosing, if it did do so, further defects or made necessary further requirements.

The fact that neither Heffington nor his attorney would take or examine the abstract at that time does not, in our opinion, lend aid to the charge that Heffington breached his contract.

For a discussion of the rule as to a purchaser acting under advice of counsel, see Dixie Oil Co. v. McBurnett, 6 S.W.2d 83 (judgment rendered by the Supreme Court as per opinion of the Commission of Appeals).

The record discloses that, after Heffington's attorney discussed the objections and requirements made with Gillespie, a suit was filed to obtain a construction of the will and judgment was not rendered therein until February 10, 1942.

It further discloses that executor Gillespie testified that he had cured all of the objections that were raised by Heffington's counsel, but he declined to testify when they were cured, and he contented himself with saying in effect that he did not promise to cure them at any certain time, but that he told Heffington he could and would cure them and that he had done so.

■ Time being the essence of the contract here, we do not believe that Heffington was required to wait until some date not earlier than February 10, 1942, for a closing of the deal.

We believe that the evidence in this record shows that the executors could not convey the title to this tract of land and meet the requirements and objections made by counsel before or by December 15, 1941.

■ Under such a record as is before us, we believe the seller had the burden of establishing his ability to so deliver, before he could recover the earnest money involved.

This brings us to the consideration of one phase of this case that is not material un-

less we are in error in reversing and rendering judgment herein.

That phase is this: Assuredly, under the record before us, the trial court was without authority to give a peremptory instruction for appellee Gillespie.

■ It cannot be said that the undisputed evidence shows that Heffington breached his contract, and it is solely on the issue of a breach by Heffington that the trial court could be warranted in giving a peremptory charge against him. This is not a case where the courts will assume that the seller could have conveyed title free and clear of objections and meeting all requirements made by counsel for the buyer.

The trial court took from the jury the right to pass upon the issues that touch upon a breach by the purchaser and readiness and ability of the seller to convey the title contracted for.

This the trial court could not do, in the light of this record.

Viewing the case as we do, the judgment of the trial court awarding recovery against Heffington by Gillespie is reversed and judgment is rendered for Heffington for a recovery of such sum.

The judgment as to the stakeholder Bank is not appealed from and is left undisturbed.